(Licking County, O. Common Pleas Court.)
April Term, 1897.

WILLIAM SHAW ON BEHALF OF THE CITY OF NEWARK, OHIO, v. DANIEL J. JONES, et al.

---

*Action to restrain illegal action of municipal authorities—Must be brought on behalf of municipality—Sec. 1778 R. S.—*

An action by a taxpayer, to restrain municipal authorites from action claimed to be illegal, under sec. 1778, R. S., can only be brought on behalf of the municipality, and not by a taxpayer for himself and other taxpayers; but where such an action is brought in wrong form, a court will allow an amerdment to make it comply with the statute.

*Special act conferring corporate power—Act of May 9, 1894—*

An act of the legislature providing for the appointment of two trustees in cities of third grade, second class, having at the last federal census a population of not less than 14,000, nor more than 14,500, or which at any future census may have such population, owning and operating an electric light plant, is a special act conferring corporate power, applying only to Newark, and is therefore in violation of art. 3, sec. 1, of the constitution of Ohio.

*Abuse of corporate power—Need not be by contract—*

Every contract made in violation of law or ordinance govering the matter, is an abuse of corporate power, although every abuse of corporate power may not be a contract.

*Special meeting of council—Leaving notice at usual place of business not in compliance with statute—*

Under sec. 1694, R. S., every ordinance or resolution of a general and permanent nature must be read on three different days, unless the rule is suspended by a three-fourths vote of all the members; but such reading may be at a special meeting properly called, although called for a different purpose. But to make the action of council at a special meeting valid, it is required that such special meeting be properly called. The statute providing that notice of a special meeting must be served on every member of council personally, or by leaving notice at usual place of abode, a notice, therefore, of a member, not at his usual place of abode, but at his usual place of business, is not in compliance with the

statute, and the member so served not being present, the action of council at such special meeting is void.

*Public office defined—*

An office is a public employment or station, conferred by the appointment of the government, and the term embraces the idea of tenure, duration, emolument, and duties. It is the duty, of his office, and not the nature of that duty, which makes him an officer, and not the extent of his authority.

---

JONES, J.,

Two cases are presented to the court, under the title of William Shaw, on behalf of the City of Newark, Ohio v. Daniel L. Jones et al., the members of the city council.

One of the cases presents matters in relation to the electric light plant, and the other in reference to the fire department.

The facts material to the decision of these two cases (and they do not differ excepting in what I have said, that one relates to the electric light plant and the other to the fire department), I will state as to the contention in relation to the electric light plant. Previous to 1895, the city of Newark, or the council of the city, established an electric light plant, provided for the erection of buildings, and made provision for the machinery and appliances necessary to light the city, its streets and alleys by electricity.

In 1895, June 17, an ordinance was passed by the city council, the first section of which is as follows:

"That the offices of superintendent and electrician, engineer, fireman, and three trimmers of the municipal electric light plant of the city of Newark, Ohio, are hereby created. That said officers and each of them shall be appointed by the mayor with the advice and consent of the council, at the first regular meeting of the council after the taking effect of this ordinance, and the first incumbent of each of said offices shall serve at the pleasure of the council, unless sooner removed, until the third Monday in April, 1896, and shall then, and annually thereafter, be likewise appointed to serve at the pleasure of the council, unless sooner removed, for the period of one year thereafter, or until their successors respectively are appointed and qualified."

The ordinance goes on to provide for the duties of each of these places, and provides that the incumbent shall take an oath of office, and give bond, and fixes their salaries, to be paid annually, establishing annual salaries. Appointments were made under that ordinance for the year 1895, to run according to the ordinance until April, 1896; and in April, 1896, successors to the first ones appointed were appointed in accordance with the ordinance.

It is provided in the ordinance that these appointments shall be made by the mayor, with the advice and consent of the council.

In 1894, preceding the passing of this

ordinance, a law was passed by the legislature providing that the electric light plant should be managed by a board of two trustees in cities of the third grade of the second class, having a population at the last federal census of not less than 14,000, and not more than 14,500, or any city which should have at any subsequent federal census this population.

On May 3, 1895, there was passed an ordinance which created the offices of superintendent and electrician, fireman, and trimmers of the electric light plant. A similar ordinance was also passed, repealing the creation of the fire department offices.

Subsequent to that, on May 17, two sets of resolutions were passed by the council, and applying to all these offices, of which the following is a specimen (they are all the same), headed: 'Resolution of the city council of the city of Newark, Ohio." "Resolved: That the services of William Clark, as engineer at the municipal electric light plant, are no longer desired, and the city clerk is hereby directed to so notify him."

The other set of resolutions is in the following form: "Resolved: That Henry Schneidt is hereby employed as engineer at the municipal electric light plant at a salary of $66.66 per month; said employment to continue until he is otherwise notified by the council."

And as to each of the places under this electric light plant, similar resolutions were passed; both these resolutions, being passed at the same meeting. Under the direction of these resolutions the clerk notified the parties whose services were dispensed with, of that fact; and the parties appointed or employed to take the place of those whose services were dispensed with, proceeded to demand possession of the property controlled by those different places

It is not disguised from the judge, not disguised from anybody, that this contention arose from the fact that the mayor and the city council could not agree upon the dispensation of these offices, and the filling of them. Those people who were in possession of the offices or places under the appointment of the city council and the mayor in 1896, still retained possession of the places, and the council, on account of the disagreement or supposed disagreement, proceeded to pass this repealing ordinance. Now, the judge of the court cannnot fail personally to deprecate any state of affairs that would give rise to a contention of this kind. The public interest is not subserved. The only question in the whole matter is a question of prerogative simply. That question was settled, so far as the English speaking humanity is concerned, hundreds of years ago. Nor is there any excuse for this contention by reason of any obscurity in the law, for the statutes and decisions of the courts of Ohio render it perfectly plain what is right and what is wrong in all this matter. The mayor of the city contends,

or the result of the contention is, that he is the appointing power. The council contended that their consent and advice must be obtained and secured before any appointment can be made at all. It would be much more seemly if these parties, having, upon their own claim equal authority, should, upon a matter in which they disagree, come to some sort of understanding for the public interest. If the mayor presents a good man to fill these offices, it is the business of the council to confirm it. If he does not, it is the business of the council to refuse forever to confirm it. But, these reflections are only personal reflections; and the court, as a court, has nothing to do with them. It is the business of the court to decide these matters whether it is profitable or otherwise.

In so far as the statement of the court of the facts does not cover all the facts, the special matter considered will suggest any such facts as are not now stated.

This petition is brought, so far as the caption is concerned, by William Shaw on behalf of the city of Newark, Ohio. The allegation in the petition is, that "plaintiff is a resident of the city of Newark, Ohio, and is a tax-payer therein; and he brings this action on behalf of himself and other tax-payers of said city, who are too numerous to be brought personally into court."

Now, it is objected that this plaintiff has not the capacityt to sue. As I have said, the caption says: "William Shaw on behalf of the city of Newark, Ohio." The allegation is, that William Shaw brings this action on behalf of himself and other tax-payers. Now, if William Shaw brings this action without personal interest—without any other personal interest except what any citizen would have, then the only authority for him to bring this action is sec. 1777, and section 1778 and the action must be brought upon some of the grounds or to obtain the relief provided for, in some of the cases stated in those sections.

Now, sec. 1777, provides as follows; and it is in relation to the duty of the city solicitor: "He shall apply, in the name of the corporation, to a court of competent jurisdiction for an order or injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing the same, or which was procured by fraud or corruption."

Sec. 1778, provides: "In case he fail, upon the request of any tax-payer of the corporation, to make the application provided for in the preceding section, it shall be lawful for such tax-payer to institute suit for such purpose, in his own name, on behalf of the corporation."

Now, as I said, William Shaw does not appear to, nor do the facts show that he has any personal interest in this suit different from the interest that all the citizens of Newark have. That his right as a person—'

his personal rights, have not been infringed, except this public right; that no right of property is violated by anything that is in controversy in this case. Therefore, to sustain this action, it must appear that the suit is brought on behalf of the corporation. It must be brought to obtain relief: First—To enjoin the abuse of corporate power. Second—To restrain misapplication of corporate funds. Third—To restrain the execution or performance of a contract made on behalf of the city, in contravention of the laws or ordinances governing the same, or which was procured by fraud or corruption. In that statute there is no ground for bringing the suit to prevent a multiplicity of suits, and no authority for maintaining the action on behalf of himself and other tax payers, not naming the others, because too numerous to mention.

Now, it appears from the allegations of this petition that the plaintiff has brought this suit on behalf of himself and other taxpayers. It cannot be maintained under this statute. And this statute providing a mode in which such general suits may be maintained, is exclusive of any other remedy.

While it has been held in many states, and would perhaps so be held in this state, that a tax-payer can bring suit to prevent the illegal action of the city authorities; yet in this state, where the remedy is granted by statute—is given by statute, the statute must be pursued.

But the court will permit the plaintiff to amend the petition and state that the action is brought on behalf of the corporation, instead of on behalf of himself and other taxpayers of said city.

Now, it is a part of the facts in this case, not stated, however, before by me, that William Shaw is a tax payer. To what extent, it is not necessary to inquire.

Now, if it appear from the facts: First—That there is about to be a misapplication of the funds of the city; or, Second—An abuse of the corporate powers of the city; or Third—A contract made on behalf of the city in contravention of the laws of the state or an ordinance governing the subject matter of the contract, and the execution or performance of that contract is being, or about to be, proceeded with, then this plaintiff can maintain this action. Otherwise, not. It is to be observed that this is not the appropriate proceeding to test the right of the persons who are at present in possession of these places in the electric light plant and who claim to hold over by appointment of 1896, and whose places have not been filled by the selection of successors; or, indeed, of any persons in possession of those places, whether rightfully or wrongfully—this is not the appropriate proceeding to test their right to hold their office.

A proceeding in quo warranto is the only method of ousting a usurper of an office. Courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers; such questions being of a purely legal nature,

and cognizable only by courts of law. Reemelin v. Mosby, 47 Ohio St., 570, 573.

Injunction is not the appropriate remedy to try the title to a public office or determine questions concerning the authority to make appointments thereto.

(The same case, 570, first paragraph of the syllabus.)

The court will, therefore, not enjoin the defendants or any one else from putting these men or anybody else out of these places. These men must defend their own places, in or by proper proceedings at law.

It is claimed on behalf of the plaintiff that all three of these matters have occurred.

As to the first, viz: Misapplication of corporate funds: It has not been shown that anything has been done to misapply funds. A misapplication of funds does not mean merely, the making of a contract, which, on its face, is an agreement on the part of the city to pay money to the party, or any party, upon performance of something stipulated. Such a contract may render the city liable upon settlement, but until settlement there is no application of funds. When settlement is made, and the council proceeds to make an order for the money, an application of the funds occurs, and if the contract is illegal, or there is no legal obligation on the part of the city to pay, there would be a misapplication, or a threatened misapplication, which is to be restrained under sec. 1777.

There is remaining to be considered as ground for maintaining this suit, whether there has been, or is about to be, First—An abuse of the city's corporate powers; or, Second—Whether a contract is about to be executed or performed, which has been made in contravention of the law, or ordinances governing the subject matter of the contract. And these two matters may be considered together, because they do not differ except in degree.

Every contract made in contravention of law, or ordinance governing the matter, is an abuse of corporate power, although every abuse of corporate power may not be a contract.

It is difficult to perceive what is meant by the abuse of corporate power, unless it means something done in the corporate name, or by the corporate authorities, which is either expressly forbidden by statute, or the power to do which has not been granted by statute. If an act is within the power granted, it is difficult to see how the exercise of it would be an abuse.

It cannot be successfully maintained that the repeal of the ordinance of 1895, creating offices of the electric light plant, cannot be made legally by the council, or that it would be an abuse of corporate power to repeal that ordinance, notwithstanding the city might be left in total darkness as a result. Councilmen are not amenable to the courts for a legal action, although they may be actuated by silly or corrupt motives. They are only amenable to public opinion and to their constituents, and the consequences make no

difference. State ex rel. Attorney General v. Bryson, 44 Ohio St., 457, 470. And I wish to read that—some of it. Heinmiller was the party in interest. It is a suit brought to test the right to an office of fire engineer, I think, in Columbus, and the mayor, at the expiration of Heinmiller's official term, made an appointment of Bryson, or Heinmiller—I may get those mixed—claiming that the appointment of the mayor invested the appointee with the possession of the office, and the right to be the engineer, without the confirmation of the council. The office of fire engineer was created by the council, and it was provided that the office should be filled by the appointment of the mayor, with the advice and consent of the council, and that the incumbent should serve one year, or until his successor was elected and qualified. The court held in that case that the advice and consent of the council was necessary to an appointment; that the incumbent had a right to hold over until his successor was elected and qualified; that the appointment of the mayor did not constitute an officer, and the appointee had no right to the possession of the office; and it was argued in that case that there might be circumstances occurring in which the city would be left without any fire engineer, and without any superintendent of the fire department, and the property of the citizens might be sacrificed. A very gloomy situation was portrayed to the court. The court say:

"The allegations as to the misconduct of a portion of the council contained in the answer, and the insinuations of improper motives made upon the other side in the brief, we do not regard as affecting the question in any way. The court cannot in this case, consider the motives nor private desires, nor designs, of either branch of the city government. We deal with official acts, and determine their legal effect, but not with private or unofficial acts. The ordinance gives to the mayor the selection of a person for fire engineer. His position as chief executive officer of the municipal government would suggest that he possesses superior knowledge of the situation and need of the fire department, and sufficient knowledge of the qualifications necessary to a satisfactory discharge of the duties of fire engineer, and it is not unreasonable to assume that the framers of the ordinance contemplated that all nominations to that office would be made with a purpose of conserving the public good, and that, in the ordinary course of business, the council would be content to apply but one test, viz:—that of fitness, to any nomination made for that office, leaving the responsibility of change, if any, where the ordinance seems to have left it, with the mayor. If, in the performance of these duties, any have been governed by improper motives leading to unjustifiable conduct, the parties are not amenable to the court in this case, but to public opinion and to their constituents."

The only matter of fact in this case which can be claimed to be an abuse of corporate power or contract made in contravention of the law, or the ordinance governing the matter, is the resolutions of the council employing certain persons to fill the places in the electric light plant. (One of these resolutions which I have read, employing Henry Schneidt to be fire engineer.) This is claimed on two grounds: First—Because the act of May 9, 1894, (91 O. L., 719 and 720, to create a board of trustees of electric light plant for certain cities of the third grade, second class, provided for the management of the plant by a board of two trustees, to be appointed by the mayor; and it is claimed that these resolutions are in contravention of that statute. Second—Because the ordinance of June 17, 1895, is still in force, and the men in the places hold over until their successors are qualified. That the ordinance has not been repealed, and therefore these resolutions are in contravention of the ordinance, which, being in force, governs as to the contracts made by the resolutions, to-wit:—as to the naming and management of the electric light plant.

First—Are these employments made by the resolutions referred to in contravention of the statute? 91 O. L., 719. Now, this statute reads as follows, (the first section of it) "That in any city of the third grade of the second class, having a population at the last federal census of not less than fourteen thousand, not more than four thousand five hundred, or which at any subsequent federal census may have such population, owning and operating an electric light plant for the purpose of furnishing the city and the citizens thereof, with light and power, the management, control and operation of such electric light plant shall be and is hereby vested in a board to be known as the electric light board, to consist of two members, not more than one of whom shall belong to the same political party, and whose term of office shall be for two years, said members to be appointed by the mayor of said city. Upon the appointment of the first board the mayor shall appoint one for one year, and one for two years, and thereafter shall appoint one annually."

Of course, the reflection arises that this statute was ignored by the passage of this ordinance of 1895, by the action of the mayor and council in appointing under that ordinance in 1895, and also in 1896. Now, these resolutions of employment, (because they are put in that language, ("Henry Schneidt is hereby employed as fire engineer," are, in terms, in contravention of this statute. These resolutions proceed to employ men to manage the electric light plant by the counsel itself, asserting that power, and disregarding the requirement of the statute that a board of two shall perform the duty. It is incontrovertible that if the statute provides that the board shall do it, then the council has no power to do it, because the manner of exercising the power is specified, and when that is done, the power can be ex-

ercised in no other way. That is upon familiar principles. It is not necessary to cite authorities upon that.

But it is objected by defendants that this statute is unconstitutional, being in violation of art. XIII, secs. 1 and 6, of the constitution. Secs. 1 of that article reads as follows: "The general assembly shall pass no special act conferring corporate powers."

Sec. 6, reads: "The general assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent the abuse of such power."

If this statute is in contravention of these sections of the constitution, it is void and of no effect. To be in contravention, it must appear that it is, First—A special law; and, Second—That it confers corporate powers.

This statute applies only to "cities of the third grade, of the second class, having a population at the last federal census of not less than fourteen thousand, nor more than fourteen thousand five hundred, or which at any subsequent federal census may have such population."

It is not claimed that any other city in Ohio had such population, excepting Newark, and the statute might as well have designated the city by the name of "Newark"

That such a statute is special, and unconstitutional, admits of no doubt. The P. Ft. W. & C. Ry. Co. v. Martin, 53 Ohio St., 386, first paragraph of the syllabus, and 399, 400 and 401. The State v. Mitchell, 31 Ohio St., 92, and other decisions not cited here.

This statute is a special act, which the legislature had no power to pass, if it confers corporate powers.

But it is not contended here that it does not confer corporate power, and it could not be in the light of The State v. Pugh, 43 Ohio St., 98, third paragraph of the syllabus.

That a statute may confer corporate powers upon a city which is the only one of a class, there is no doubt, and that is not in contravention of the constitution; and that was the matter decided in State, ex rel. v. Hawkins, 44 Ohio St., 98, 108. This statute conferring corporate power, and upon only the city of Newark, whether the city of Newark be of the third grade or not, if this statute is unconstitutional because it confers it specially, does not matter, and that question is not considered by me.

It follows, therefore, this statute being unconstitutional and void, the resolutions were not in contravention of it.

This makes it unnecessary to decide the grade question.

The only remaining question is: Do these resolutions abuse the corporate power, or are they contracts made in contravention of the ordinance of June 17, 1895?

That they are contracts is clear. They are contracts of employment of these men for these places.

It is to be noted that when the council pass an ordinance upon any given subject within its powers, that ordinance is binding upon the council as much as upon the citizens. The council may repeal the ordinance, but until it is repealed, the council must obey it, and it is the law. It can not be simply disregarded.

The ordinance of June 17, 1895, purported to create the offices of superintendent and electrician, engineer, fireman and trimmers, of the municipal electric light plant of the city of Newark. I have read the first section, which indicates that. It proceeds to prescribe their duties. Sec. 6 prescribes their qualifications; the oath that they are to take, and bond. Sec. 7 provides the compensation, which is an annual salary.

Sec. 1. The duration of the office, which is one year or until their successors are elected and qualified.

It is contended by the plaintiff that these places provided for are offices, and the incumbents officers; and that, if they are so, they can only be filled by appointment of the mayor, with the advice and consent of the council, and that the ordinance being still in force, the incumbents hold over until their successors are qualified. That they can be filled in no other way, and that these resolutions attempt to fill them otherwise, and are in contravention of the laws of the state and the ordinance.

Having seen that these resolutions are contracts between the council as employer and the men selected as employes, if the council had no right under the laws or the ordinance, to make the contracts, they would be illegal, and in contravention of the law and the ordinance.

In order to the solution of this matter, it must be decided: First—Is the ordinance still in force?

Second—If it is still in force, are the places, offices, and the incumbents officers?

Third—If the ordinance is still in force and the incumbents officers, had the council the power to fill the places by employing other men by resolution, without appointment by the mayor?

First—Is the ordinance still in force? This depends upon the validity of the ordinance of repeal, passed May 3, 1897. The ordinance was introduced and read the first time at the meeting of its introduction. The second reading occurred at a meeting which was not a regular meeting, which was, if it was anything, a special meeting, and it was called at the instance of five members of the council, and the call was signed by the president of the council Daniel L. Jones, and C. S. Brady, the clerk of the city council. It was served—there is some controversy about one or two members, but it was served upon all the members, excepting (personally, or at their places of abode,) the mayor and William E. Miller; upon William E. Miller the call was served by leaving the notice at his place of

business. Not upon him personally, nor at his place of abode. If the ordinance creating the places has been repealed, then, although while the ordinance existed the incumbents may have been "officers," yet, upon its repeal there would be no offices, and of course no incumbents, since the existence of the office depended upon the existence of the ordinance.

It is not susceptible of controversy that the creation of these offices or places being discretionary with the council, the office or place may be abolished with equal discretion. Indeed, there would be no legal obstruction to the abolishment of the electric light plant entirely, as well as the places under it.

It is objceted that the repealing ordinance was not legally passed. First—Because it was not read on three different days. That that meeting was not legally called, because it was not called by the mayor or three member. Third—Notices were not served on the mayor, and all the other members personally, or at their regular places of abode. Fourth—Because it was called for a special sewer matter, and general business could not be transacted at it.

I find as a fact that it was read on three different days; and I hold that at a called meeting, the council is in session for all purposes, notwithstending that the call may specify scme particular matter. I find as a fact that the second reading of the ordinance occurred at no regular meeting, and that the call was issued for the meeting, signed by the president and clerk, at the instance of five members of the council. Notices were issued, signed by the president and clerk. That they were not served on the mayor, and were left at the place of business of—that is, the one served on him —at the place of business of William E. Miller, one of the members, and not served on him personally, or left at his usual place of abode.

The question is, was this repealing ordinance legally passed? Was it read, within the meaning of the statute, on three different days? Sec. 1964, provides that it shall be so read as to resolutions and ordinances of a general or permanent nature. Of course, this means on thrée different days, in sessions of the council. A reading while the council was not in session would not do. It must be a legal session. This provision as to three distinct readings is mandatory upon the council, and cannot be dispensed with except by a three-fourths' vote of all the members. So decided by the supreme court in Campbell v. Cincinnati, 49 Ohio St., 463; Bloom v. Xenia, 32 Ohio St., 461. In this last case the defense was made that the ordinance prohibiting beer houses was not read three different times, made as a defense to the suit upon the prosecution of Bloom for violating the ordinance.

Sec. 1677 provides that the council may prescribe times of meetings, and that the mayor, or any three members, may call a special meeting upon notice to each mem-

ber, served personally, or left at his usual place of abode. This means on every member. The mayor, although having the righ to sit with the council, and take part in their deliberations on questions pertaining to his department, (sec. 1682), is not a member, and is not entitled to notice.

In this call for a special meeting, William E. Miller was not notified by being served personally, nor by leaving notice at his place of abode. This requirement to notify a members in the manner prescribed, is indispensable, and is a condition precedent to the legality of a special meeting. The notice must not only be served, but in accordance with the statute; and I think that by analogy of the cases above cited, Campbell v. Cincinnati and Bloom v. Xenia, supra, as to the requirement that an ordinance must be read at three distinct times, and upon reason, that a legal special meeting cannot be constituted except under the terms of the statute. When a member is not served, and he is not there, the meeting is not legal, because if it could be done in any other way, it could be done by notifying only such members of the council as wuold be in favor of the project on hand. It might lead to great detriment to the public interest.

Miller was not served, and was not present, and the special meeting was not legally held, and the second readirg of the ordinancce was nugatory, and cannot be counted as a reading.

The repealing ordinance is therefore void, and does not repeal the ordinance of June 17, 1895.

Whether this notice was properly signed— whether it ought to be signed by the three members or by the mayor, is not decided.

Having determined that the ordinance of 1895, is still in force, we must look to it and the law to determine whether the council has the power to make the employment of other persons, to fill the places provided for by the ordinance. That is, to do it by resolution without the concurrence and appointment by the mayor.

The first section of the ordinance provides that the places shall be filled by the appointment of the mayor with the advice and consent of the council, and on the third Monday of April, 186, shall be likewise appointed to serve for a year, and until their successors are appointed and qualified. Thus the ordinance fixes the mode of appointment, and that fixes the law of the matter, whether we consider the incumbents officers or employes. If the incumbents are officers, then sec. 1711, Rev. Stats., fixes the mode of appointment in the same way.

Sec. 1711, provides: "Except as otherwise provided in this title, the appointment to every office created by law or ordinance shall be made by the mayor, with the advice and consent of the council; a concurrence of a majority of all the members elected shall be required to confirm an appointment, and in every vote resulting in confirmation, the names of those voting, and how they voted, shall be recorded."

Are these incumbents officers? Now, this ordinance says they are all officers. Sec. 1707, provides what shall be officers of cities of the second class, and provides as follows: "The officers of a city of the second class shall consist of a mayor, a marshal, except as hereinafter provided, a city solicitor, a city commissioner, who shall be superintendent of streets and highways, a treasurer, except as provided in sec. 1708, all of which officers shall be chosen by its electors, except as hereinafter provided, and a clerk, who shall be chosen by the council; * * * and the council may, when in its own opinion expedient, create by ordinance the office of auditor, civil engineer, sealer of weights and measures, fire engineer, and superintendent of markets and provide for their election or appointment."

Sec. 1770, provides as follows: "The council may provide for the appointment or election by the electors of the corporation, wards or districts, as the case may require, of such other officers as it may deem necessary for the good government of the corporation, and the full exercise of its corporate powers."

And then sec. 1711, provides: "Except as otherwise provided in this title, the appointment to every office created by law or ordinance shall be made by the mayor, with the advice and consent of the council." Now, sec. 1707, provides that when the council deem it expedient, they may create and provide for the office of fire engineer.

Sec. 1710, provides that they may provide for the appointment or election of such other officers as they deem necessary. And this ordinance proceeds to create what it calls "officers" Now, of course, they might not be officers, although this ordinance calls them officers. Now, what is an officer? There is a very full and interesting note cited by counsel on both sides—the case of Shelby v. Alcorn, 7 Am. Dec, which discusses this question—the difference between an employment and an office, and I will read from the bottom of page 179:

"But these definitions, though true enough, are not of value in distinguishing a public office from a public employment, since both may concern the public, and in both the public may be interested Therefore, though an office must concern the public, it must have other characteristics as well. And a better definition of an office is, that it is a right to exercise a public function of employment, and take the fees and emoluments belonging to it. It involves the idea of tenure, duration, fees, or emoluments, and powers, as well as that of duty. It implies an authority to exercise some portion of the sovereign power of the state, either in making, administering, or executing the laws The idea of an office clearly embraces the ideas of tenure, duration, fees or emoluments, rights, and powers, as well as that of duty. The intrinsic meaning of the word is well expressed by the old English word 'place,' and the figurative terms 'incumbent,' 'swearing in,

"entering upon', 'vacating,' 'which are constantly applied to offices, and have the same radical idea. An office is a public station, or employment, conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument, duties. These definitions present most of the criteria for determining the question, what is an office? But it is not necessary that an office should have all of the above named characteristics, as we shall see from the separate discussion of them below. But it must possess more than one of them, and the mere fact that it concerns the public will not constitute an office. The most important distinction of an office is, that it involves the exercise of some of the sovereign powers of the state. In the abstract, 'office' signifies a place of trust. In legal idea, an office is an entity; and may exist in fact, although it be without an incumbent. The construction given by the legislature continuously to the clause of the constitution in question may be taken into consideration in determining who are to be regarded as officers under such constitutional provision."

Now, further along, this note goes on: "It perhaps cannot be maintained that an office cannot exist unless its duties and powers are prescribed by statute. But if such is the case, it is a strong argument that the place is an office, and taken in connection with the fact that the office involves the exercise of sovereign powers, and possesses other characteristics of an office, it will most certainly be held such Statutory provisions concerning the duties and powers of a government employment, and the fact that these powers and duties are not defined by contract furnishes, therefore, one of the criteria for determining it to be an office. Where a place provided for by statute is denominated therein an 'office,' this furnishes one reason for determining the place to be an office."

"So where the manner of appointment or election of the incumbent is provided for by law, this, in connection with other characteristics of an officer, will determine it to be such."

Further along: "One of the characteristics of an office named in the definitions is tenure, duration or continuance. Certainly, the fact that the duties of an office are continuous and permanent, and not merely transient or temporary, furnish one ground for holding it to be an office."

"Any man is a public officer who hath any duty concerning the public, and he is not the less a public officer where his authority is confined to narrow limits; for it is the duty of his office and the nature of that duty which make him an officer, and not the extent of his authority."

Now, it is said (and it is so,) that to be an officer a man must have placed within his keeping some of the sovereignty of the state. But sovereignty means 'power.' Sovereignty means 'supreme power;' and if a man is placed in a position which is con-

tinuous and permanent, and has certain powers, which under the law, nobody can exercise but him—which nobody can control but him, then he has some of the sovereign power delegated to him; and as long as he continues, or the law which provides for the office or place continues, he has that portion of the sovereign power existing in him.

Now, this ordinance provides that these men shall be officers; provides that they shall have an annual salary. Provides that they shall hold for a specified period, or until their successors are elected and qualified. Provides that they shall take an oath of office. Provides that they shall give a bond for the proper discharge of their duties; and all the duties of the office are marked out by the ordinance; and nobody can interfere with their performance of the duty. The mayor has no power to do it. The council has no power to do it, except by passing another ordinance, or an amendment to the ordinance, prescribing other duties, or limiting the duties prescribed, or, by repealing the ordinance altogether, and abolishing the places.

So that, although the duties are narrow, and are such as except for the permanency of the places, might be done by mere employes employed from day to day, which would be a great inconvenience of course to the management of the public department, yet all the criteria that have been mentioned, both as to the possession of a part of the sovereignty, as to the permancy of the employment, as to the oath of office, as to the bond required, and everything that might be brought up, in order to determine whether these are offices, exist; and it is the opinion of the court that they are offices.

Now, it is claimed that sec. 1710, empowers the council to provide for the appointment of such other persons as it may deem necessary; and that that means that they can provide for the appointment in any way that the council may deem proper, and not by the appointment of the mayor.

Now, this ordinance provides how these appointments shall be made. But this construction cannot prevail. Sec. 1711, forbids that construction. The council may select whether these other officers shall be appointed or elected, and if the provision is for appointment, the appointment must be made according to sec. 1711, unless Title XII provides a different way. Now, sec. 1692 provides the only power which the council has of providing for the lighting of the streets and alleys, and it provides that it shall be done by ordinance.

It follows from what has been said, that the ordinance being in force, the incumbents are officers; they were appointed April, 1896, for a year or until

[COPYRIGHT, 1897, BY CARL G. JAHN.]

VOL. IV.—*28

their successors are qualified, (sec. 1713, Rev. Stats.,) and that they cannot be filled in any other way, except by the appointment of the mayor, and the confirmation by the council.

These resolutions which provide for the appointment of other men by the council, are therefore repugnant to this ordinance, and repugnant to the statutes of the state; and the enforcement of the performance of these resolutions of employment will be restrained by the court in both cases, and not anything more than that.

B. G. Smythe, Attorney for Plaintiff.

S. M. Hunter, J. B. Jones, and F. B. Fulton, City Solicitor, for Defendants.